UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
KRISTIN CHU SMART and        )
CLARA CHU,                   )
Plaintiffs                   )
                             )
v.                           )
                             )
CR RESORTS, LLC,             )
Defendant                    )   Civil Action No. _____
-------------------------------
```

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiffs Kristin Chu Smart ("Ms. Smart") and Clara Chu ("Mrs. Chu"), citizens of New York, bring this action against defendant CR Resorts, LLC ("Canyon Ranch") to recover for both physical and emotional damage they suffered while on holiday at the defendant's spa. Defendant owns and operates a luxury spa located in Lenox, Massachusetts, that advertises itself as a place of health and wellness. Plaintiff Kristin Chu Smart ate a veggie burger at one of the cafes owned and operated by defendant and had a severe life-threatening allergic reaction, even though the defendant had assured her that her burger was safe for her to eat. Plaintiffs assert claims for negligence, breach of warranty, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress and violation of M.G.L. c. 93A.

### PARTIES

1. Plaintiff Kristin Chu Smart is an American citizen who resides at 60 Riverside Boulevard, Apt. 2903, New York, New York 10069.

2. Plaintiff Clara Chu is an American citizen who resides at 81 Nottingham Road Manhasset Hills, NY 11040. She is the mother of plaintiff Kristin Chu Smart.

3. Defendant CR Resorts, LLC is a Delaware corporation whose headquarters is at 8600 East Rockcliff Road, Tucson, Arizona. CR Resorts, LLC conducts business in Massachusetts at the Canyon Ranch Wellness Resort located at 165 Kemble Street, Lenox, MA 01240.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the plaintiffs are citizens of New York and the defendant is an Arizona corporation and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391, because all of the events giving rise to plaintiffs' claims occurred here and the Defendant transacts business here.

## FACTS

6. In November of 2017, Ms. Smart and her mother made reservations and paid to attend Canyon Ranch in Lenox, Massachusetts for the weekend of December 8, 2017. Canyon Ranch is a famous health spa and retreat that has been touted as "one of the top wellness destinations in the county."[1]

7. Ms. Smart paid defendant the amount of $3060 for her and her mother's vacation at Canyon Ranch. A copy of the credit card receipt is attached hereto as Exhibit "A".

8. On November 16, 2017, Ms. Smart submitted to Canyon Ranch, via email, a health questionnaire (given to her by Canyon Ranch) where she went into detail about her severe food allergies.

9. On December 2, 2017, Ms. Smart received an email from Angela Seng, the Food and Menu Development Coordinator for Canyon Ranch, clearly stating Canyon Ranch's

---

[1] https://www.forbes.com/sites/katiechang/2017/06/25/why-canyon-ranch-remains-the-countrys-top-wellness-resort/#79b45bcc1e63

2

acknowledgement of her food allergies. In that email, Ms. Seng informed Ms. Smart that the ingredients in all foods served on the property are listed in a packet, which would be made available to her upon her arrival.

10. Specifically, Ms. Seng wrote, "[t]his document provides exhaustive information on all menu items and all of their ingredients. I trust it will help you navigate around what you need to avoid and provide information on the other options available." A copy of that email is attached hereto as Exhibit "B".

11. On December 8, 2017, Ms. Smart and her mother checked in to Canyon Ranch, and she was provided the packet of ingredient information by the check-in coordinator. A copy of the packet is attached hereto as Exhibit "C".

12. The check-in coordinator, who was aware of Ms. Smart's food allergies, encouraged Ms. Smart and Mrs. Chu to dine at the informal café for a quick meal before exercise classes and appointments.

13. Neither the packet nor the information received by email nor any staff member informed Ms. Smart that she should not dine at certain restaurants during her stay due to her food allergies.

14. At approximately 1:00 p.m., plaintiffs went to the café with the packet in hand.

15. Ms. Smart spoke with the server and informed him that she had life-threatening food allergies and must avoid all nuts because she was at risk for anaphylaxis.

16. The server looked at his own version of the packet and confirmed to Ms. Smart that no nuts were present in the veggie burger.

17. Relying upon the packet and the statement made by the waiter, Ms. Smart ordered a minestrone soup and a veggie burger.

18.     When the food arrived, Ms. Smart again asked if there were nuts present and was again assured by the waiter that there were not.

19.     Ms. Smart began to eat her meal. She immediately noticed the symptoms of anaphylaxis, including itchiness in her throat, a swelling sensation, and her face tightening.

20.     She asked the server for the third time if her food contained any nuts and was informed that it did not.

21.     Within a few minutes, Ms. Smart's symptoms continued to worsen, and she immediately went to Canyon Ranch's medical center for assistance.

22.     Once there, not only did the doctor refuse to administer the Epi Pen Ms. Smart needed, the nurse claimed Ms. Smart was "fine." At this point, Ms. Smart's eyes were visibly swollen, her face was flushed red and she had broken out in hives.

23.     The doctor admitted that she did not have experience administering epinephrine. Upon the doctor's reluctance, admitted inexperience, and lack of confidence to administer the Epi Pen, Ms. Smart recognized the life-threatening progression of anaphylaxis, and had no choice but to inject herself with the Epi Pen. She also had to request to be treated with Benadryl and was given a 25mg dose; she requested to be given a second dose of 25mg when the first did not provide relief.

24.     Recognizing the seriousness of the medical emergency by the medical staff, an ambulance was called to take Ms. Smart to the hospital while her mother watched. While en route to the hospital Ms. Smart's anaphylaxis continued to worsen, resulting in severe, large volume vomiting in the back of the ambulance and her "blood pressure in route drastically fluctuated with a range from 148 to 88 systolic". The Emergency Medical Technician

recognized that Mrs. Smart's condition was rapidly deteriorating and required immediate escalation in medical capabilities.

25.     The Basic Life Support ambulance carrying Ms. Smart was met on the highway by County Ambulance, an Advanced Life Support ambulance carrying a paramedic. The paramedic was transferred to Ms. Smart's ambulance where intravenous fluids and medication were given, and electrocardiograms with continuous cardiac and blood pressure monitoring were performed. The last recorded blood pressure in the ambulance continued to demonstrate persistent life-threatening hypotension (blood pressure 88/39).

26.     Upon arrival to the Berkshire Medical Center Emergency Department, Ms. Smart was given intravenous corticosteroids (methylprednisolone 125mg) and intravenous antihistamine. Upon discharge from the Emergency Department, she was instructed to monitor for signs of a "rebound reaction" and was given a prescription to continue corticosteroids and antihistamine for another four days.

27.     Later that same evening, Ms. Smart met with Mindi Morin, the Director of Canyon Ranch.  Ms. Morin informed her that the veggie burger is made daily and in-house by Canyon Ranch's culinary team.

28.     Ms. Morin investigated the situation and when she further inquired, the Chef stated that cashews are always used in the veggie burger and stated this was not merely a situation of cross contamination – there was a significant amount of cashews in the burger.

29.     Ms. Morin also sent Ms. Smart an email saying, "I cannot apologize enough for this unacceptable error on our part." A copy of that email is attached hereto as Exhibit "D".

30. The Café serving staff failed to notify the Chef of Ms. Smart's food allergies upon her arrival at the restaurant. The servers did not confirm with the culinary team that the food she ordered was safe for her to consume.

31. In a subsequent email to Ms. Smart, Ms. Morin stated that she "cannot apologize enough for this unacceptable error" that Canyon Ranch's culinary team put cashews in the veggie burger and omitted this ingredient in the packet provided to Ms. Smart.

32. Ms. Smart suffered both physically and emotionally and continues to suffer emotionally to this day. Mrs. Chu also experienced extreme emotional distress at the sight of her daughter in the midst of a life-threatening reaction and continues to suffer from emotional distress to this day.

33. Defendant advertises it services with phrases implying that patrons will "Become stronger. Healthier. Truly well," and that Canyon Ranch staff will "help you navigate and claim your own wellness." Based on the horrific incident Ms. Smart experienced, nothing could have been farther from the truth.

## CLAIM I- BREACH OF IMPLIED WARRANTY

34. Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

35. By the purchasing, processing, preparation, serving and sale of its products, the defendant impliedly warranted that the products were of merchantable quality. Specifically, the defendant impliedly warranted that the food did not contain nuts and the plaintiff would not have reasonably expected to find nuts in her food.

36. Defendant further impliedly warranted fitness for a particular purpose when it accepted and fulfilled an order for a veggie burger with clear notice that the veggie burger was for a woman with a nut allergy and should not have nuts.

37.     Defendant knew or should have known that nuts were in the veggie burger, and it knew or should have known of the danger it posed to the plaintiff who was allergic to nuts.

38.     The actions of the defendant in making and serving the contaminated, dangerous and defective veggie burger to the plaintiff were inherently defective and dangerous.

39.     A person would not reasonably expect to find nuts in a veggie burger after telling defendant about a nut allergy and requesting that there be no nuts.  Since defendant accepted the food order and produced the veggie burger knowing about the nut allergy, a reasonable person would expect that there would be no nuts in the veggie burger.

40.     As a direct result of defendant's actions, the plaintiff Ms. Smart has suffered both physical and emotional harm. Plaintiff suffered a terrifying anaphylactic reaction that included involvement of multiple body systems and required emergency hospital care and medications. Ms. Smart experienced extreme emotional distress from the violent nature of the reaction, which made her think that she would die. Plaintiff Mrs. Chu also suffered emotional harm, as she witnessed the violent reaction and feared that her daughter might die.

### **CLAIM II- FAILURE TO WARN**

41.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

42.     Defendant, as the preparer and server of the veggie burger, owed a duty to plaintiff to provide an adequate warning of the latent dangers arising from the normal and intended use of the product.

43.     Defendant knew or should have known that the veggie burger contained nuts – an ingredient that would pose a life-threatening risk to persons with allergies to nuts.

44.     The presence of nuts in a veggie burger would not have been obvious to the plaintiff, and plaintiff would not have expected to find nuts in the veggie burger.

45. As a direct and proximate result of defendant's actions, plaintiff Ms. Smart has been injured physically and both plaintiffs have experienced extreme emotional distress.

## CLAIM III - NEGLIGENCE

46. Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

47. Defendant owed plaintiff a duty of care in ensuring that all food prepared for her was safe for her to eat.

48. Defendant owed plaintiff a duty of care in ensuring that foods prepared for her were free of nuts that defendant knew she was allergic to.

49. Defendant had notice of plaintiff's nut allergy and nonetheless served her a veggie burger which contained nuts.

50. Defendant failed to act as the ordinary, reasonably prudent restaurant operator would under the same or similar circumstances.

51. Defendant failed to exercise ordinary and reasonable care to ensure that the veggie burger was free of the allergen and safe for consumption.

52. Defendant failed to maintain policies and practices to ensure the safe handling of orders for customers with food allergies.

53. As a direct and proximate result of defendant's actions, plaintiff has suffered physical harm and both plaintiffs have suffered emotional harm.

## CLAIM IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

54. Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

55. Defendant owed a duty of care to plaintiff in taking reasonable precautions to ensure that there were no nuts in the veggie burger that it knew that plaintiff, who is allergic to nuts, would eat.

56.     Defendant breached this duty of care by placing nuts in a veggie burger that does not normally contain nuts, when it knew that this veggie burger was intended for plaintiff

57.     Plaintiff was in the zone of danger because she was the intended recipient of the veggie burger that contained nuts.

58.     It was foreseeable that defendant's breach of duty would result in physical harm and severe emotional distress.  A reasonable person would have suffered such harm under the circumstances present in this case.

59.     Defendant's breach of duty caused plaintiff Ms. Smart to come into contact with nuts that proximately caused her severe emotional distress and physical harm.  She feared for her life and suffered an allergic reaction that required emergency medical care treatment. Likewise, plaintiff Mrs. Chu witnessed the terrifying incident and thought her daughter would die.

60.     Defendant had no privilege or excuse for its conduct.

61.     As a direct and proximate result of defendant's actions, plaintiff has suffered physical harm and both plaintiffs have suffered emotional harm.

## CLAIM V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

63.     Defendant knew that plaintiff was allergic to nuts.

64.     Defendant acted on its knowledge of plaintiff's allergy by intentionally or recklessly placing and/or serving nuts in a veggie burger intended for plaintiff.

65.     Defendant's conduct was extreme and outrageous.

66.     Defendant knew or should have known that its conduct was likely to cause plaintiff severe emotional distress, and did cause such severe emotional distress as plaintiff thought she was going to die, and continues to cause emotional distress.

67.	Plaintiff also suffered physical harm as a result of defendant's conduct.

68.	Defendant had no right or excuse to engage in such conduct.

69.	Plaintiff did not consent to defendant's conduct.

70.	As a direct and proximate result of defendant's actions, plaintiff has suffered physical harm and both plaintiffs have suffered emotional harm.

## CLAIM VI – VIOLATION OF M.G.L. c. 93A

71.	Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

72.	At all relevant times herein, defendant were engaged in trade and commerce in the Commonwealth of Massachusetts as defined by M.G.L. c. 93A§1(b).

73.	Defendant engaged in unfair and deceptive business practices by serving plaintiff a veggie burger containing nuts knowing that plaintiff has a life-threatening nut allergy.

74.	Despite having clear notice of plaintiff's allergy, defendant served the veggie burger with nuts to the plaintiff.

75.	Defendant's advertised itself to the public as a wellness spa that focuses on making patrons healthy and well. Defendant further acknowledged that it was capable of serving Ms. Smart a meal that would be free of her allergens.

76.	Not only did defendant not provide a weekend of relaxation and wellness but caused plaintiff's health to suffer by provoking a life-threatening allergic reaction to nuts.

77.	Defendant's conduct was unfair and constitutes a deceptive business practice.

78.	On or about June 25, 2018, plaintiff sent a demand letter via registered mail and regular mail to the defendant in compliance with M.G.L. c.93A § 9.

79. Defendant refused in bad faith to grant adequate relief upon demand though it had reason to know that its conduct violated chapter 93A.

80. Defendant's conduct was willful or knowing.

81. As a direct result of defendant's actions, plaintiff has suffered physical and emotional harm and both plaintiffs have suffered emotional harm.

## PRAYER FOR RELIEF

Plaintiffs respectfully requests that the Court provide the following relief:

- A. Declare that defendant was negligent; breached implied warranties of merchantability and fitness for a particular purpose; engaged in intentional and/or negligent infliction of emotional distress; and violated chapter 93A;
- B. Order defendant to train employees on safe practices in preparing food for individuals with known food allergies;
- C. Award compensatory damages;
- D. Award treble damages pursuant to chapter 93A;
- E. Award reasonable attorneys' fees and costs pursuant to chapter 93A; and
- F. Any other relief this Court deems appropriate and just.

## JURY DEMAND

The Plaintiffs hereby demand a trial by jury.

Date:    1/16/19                              Respectfully submitted,

/S/ Laurel J. Francoeur, Esq.
BBO# 633085
Francoeur Law Office
100 TradeCenter, Suite G700
Woburn, MA 01801
781-569-5369
laurel@francoeurlaw.com

## VERIFICATION

I, Kristin Chu Smart, verify under the pains and penalties of perjury that I have read the above complaint and its contents. I also verify that, to the best of my personal knowledge and recollection, the matters stated in the complaint are correct.

Date:

January 10, 2019

Kristin Chu Smart

I, Clara Chu, verify under the pains and penalties of perjury that I have read the above complaint and its contents. I also verify that, to the best of my personal knowledge and recollection, the matters stated in the complaint are correct.

Date:

Jan 10, 2019

Clara Chu